**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

|  |  |
|---|---|
| **JILL DREXEL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 07-2063 |
| ) | |
| **GENERAL MOTORS CORPORATION,** ) | |
| **d/b/a General Motors Corporation, GMVM** ) | |
| **Fairfax Assembly Plant,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM AND ORDER**

Jill Drexel initiated this lawsuit to recover costs she incurred as a result of alleged fraud on the part of her former employer, General Motors Corporation. The case is now before the court on the parties' Stipulation for Dismissal of Count I with Prejudice (Doc. 41) and Defendant's Motion for Summary Judgment (Doc. 42). For reasons discussed below, both of these motions are granted.

**STATEMENT OF MATERIAL FACTS**[1]

Ms. Drexel began working for GM in 1976; while with GM, she took courses to

---

[1] Consistent with the well-established standard for evaluating a motion for summary judgment, the following facts are either uncontroverted or stated in the light most favorable to plaintiff, the nonmoving party. *See, e.g.*, *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

qualify for a skilled trades position as a journeyman millwright. In the late-1980s, GM "spun off" Delphi as a separate corporation, and Ms. Drexel began working as a journeyman millwright at Delphi's Ohio plant.

In late 2003 and early 2004, certain GM facilities were experiencing a shortage of workers and decided to offer Delphi employees the opportunity to transfer to out-of-state facilities. Ms. Drexel contends that in early 2004, she saw a notice posted on a bulletin board at Delphi advertising that GM's Fairfax facility in Kansas City needed additional employees, including skilled trade workers.

Delphi employee David Cox managed the job offers and acceptances between GM's Fairfax facility and Delphi. Ms. Drexel testified that she discussed a possible transfer with Cox. Cox allegedly told her that she would be "at the top of the food chain" in terms of "area jobs that you want." Although transferring employees were to report to the Fairfax facility as production workers, rather than higher-level skills workers, Cox assured Ms. Drexel that she would be in a skilled trades position within six weeks—two weeks of orientation and then four weeks for GM to apportion the skilled workers as needed.

On March 3, 2004, Ms. Drexel accepted an offer to transfer to GM's Fairfax facility. The following day, Ms. Drexel reconsidered her decision and informed Cox that she wished to rescind her acceptance. Cox told her that she could not rescind because her acceptance form had already been sent to GM. Ms. Drexel testified, however, that she later learned that Cox had in fact not yet sent her acceptance notice to GM at the time

that she asked to rescind it.

Ms. Drexel begin working at the Fairfax facility on March 22, 2004. During the initial orientation session, she learned that there were no skilled trade positions open. She then asked her union and GM's management to release her so she could return to Delphi, but GM would not agree to do so.

Ms. Drexel testified that over the course of the next year, she inquired about skilled trade positions every other week. She called the personnel office at Fairfax and was told that GM had "over-hired skilled people and that it would be a long time before there would be any vacancies, unless people started retiring." A manager at GM informed Ms. Drexel that GM had no skilled trade openings but that Ms. Drexel would be first on the list should any positions open up. Ms. Drexel also testified that one supervisor at GM said she would "check into it and see what we can do." Based on these statements, Ms. Drexel waited for someone to retire and a millwright position to open.

Although some millwrights retired or passed away or were otherwise unable to continue work, Ms. Drexel was not moved to a millwright position. The record contains no evidence that any of the vacated positions were filled; in fact, the Fairfax plant had an over-abundance of skilled trade workers during the time Ms. Drexel was working there.

In March 2005, four men transferred to millwright positions in the Fairfax facility from a GM plant in Lansing, Michigan. According to the terms of a collective bargaining agreement between GM and the union, Fairfax was required to allow those

four workers to work as millwrights, despite that Fairfax had no millwright positions available at the time.

Ms. Drexel retired from GM in June 2006. She initiated this lawsuit against GM in February 2007, and her first amended complaint sets forth three causes of action: Count I - sex discrimination; Count II - fraud; and Count III - promissory estoppel. The parties filed a joint stipulation to dismiss Count I with prejudice. GM has filed a motion seeking summary judgment on Counts II and III.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler*, 144 F.3d at 670). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler*, 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of demonstrating an absence of a

genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256; *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed 'to secure the just, speedy and

inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## DISCUSSION

GM argues that it is entitled to summary judgment based on the statute of limitations. GM contends that Kansas's two-year statute of limitations period governs Ms. Drexel's claims for fraud and promissory estoppel. Those claims arose, according to GM, in March 2004, when Ms. Drexel arrived at the Fairfax facility and was informed during orientation that no skilled trade positions were available. Because Ms. Drexel did not file this lawsuit until February 2007, GM asserts that her claims are barred by the statute of limitations.

Section 60-513(a)(3) of the Kansas Statutes Annotated specifies a two-year limitations period for an "action for relief on the ground of fraud." Kan. Stat. Ann. § 60-513(a)(3). No statutory provision explicitly identifies the statute of limitations for a promissory estoppel claim, but "[a]s a general rule, the nature of the cause of action determines the applicable statute of limitations." *Kirtland v. Tri-State Ins. Co.*, 556 P.2d 199, 201 (Kan. 1976). Where, as here, a promissory estoppel claim is based on the underlying allegations of fraud, Kansas courts would likely apply the two-year limitations period to the claim.[2] Moreover, Ms. Drexel does not challenge GM's position

---

[2] In Sections 8b and 9b of the Final Pretrial Order (doc. #46), plaintiff sets out the
(continued...)

that the two-year statute of limitations period applies to her claims.

Ms. Drexel, however, maintains that the doctrine of equitable estoppel should toll the statute of limitations for her claims. Equitable estoppel "is an inherent power of the courts used to punish unconscionable conduct and estop a guilty party from taking advantage of his or her fraudulent conduct." *Robinson v. Shah*, 936 P.2d 784, 796 (Kan. Ct. App. 1997). The doctrine "is based upon the principle that a person is held to a representation made or a position assumed when otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances, has in good faith relied thereon." *Bowen v. Westerhaus*, 578 P.2d 1102, 1105 (Kan. 1978). Kansas courts have applied this doctrine to statute of limitations arguments, concluding that "a defendant, who has acted in such a fashion that his conduct is sufficient to lull his adversary into a false sense of security forestalling the filing of suit until after the statute [of limitations] has run, will be precluded from relying on the bar of the statute." *Coffey v. Stephens*, 599 P.2d 310, 312 (Kan. Ct. App. 1979).

Ms. Drexel argues that GM induced her to delay filing this lawsuit. She claims that before she left Delphi, she was promised that she would be placed in a skilled trade position within six weeks of starting at Fairfax.[3]  Although Ms. Drexel learned at

---

[2](...continued)
factual and legal issues which underly her claim which she labels as "Promissory Estoppel." As the fourth issue in both sections, she sets out "whether a refusal of the court to enforce the promise would sanction the perpetration of fraud."

[3] GM argues that any representations made by Cox at Delphi cannot be imputed
(continued...)

orientation that Fairfax had no millwright positions available, GM told her that she was first in line for any open millwright positions that might come available if someone retired. Ms. Drexel contends that GM lulled her into inaction and so she waited for someone to retire so she could get a millwright position. She asserts, without explanation, that she finally realized she would not get a millwright position only after the four workers transferred from the Michigan plant in March 2005. Thus, she maintains, this lawsuit, filed in February 2007, is timely.

"A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief." *United Am. State Bank & Trust Co. v. Wild W. Chrysler Plymouth, Inc.*, 561 P.2d 792, 795 (Kan. 1977). Ms. Drexel cannot satisfy these requirements for equitable estoppel. No reasonable jury could conclude that the statements GM made would rightfully induce a person to believe that GM was actively trying to get Ms. Drexel a millwright position. Ms. Drexel can point to no statements from GM that gave her reason to delay filing her fraud and promissory estoppel claims. In fact, she had been told that it would be a long time before any millwright positions came available. Merely being informed that she was first on the list for a millwright position is not a representation that she would

---

[3](...continued)
to GM. The court accepts, for purposes of the equitable estoppel argument, Ms. Drexel's contention that Cox's statements can be imputed to GM.

certainly be placed in a millwright position, particularly when combined with the knowledge that the Fairfax facility was over-staffed with skilled trade workers.

Ms. Drexel suggests that her situation is factually similar to that in *Levi Strauss & Co. v. Sheaffer*, 650 P.2d 738 (Kan. Ct. App. 1982). In *Levi Strauss*, a store owner brought a claim against Levi Strauss, the jeans manufacturer, for breach of an exclusive dealer contract. *Id.* at 740. The store owner maintained that Levi Strauss should be estopped from raising a statute of limitations defense because Levi Strauss "caused [him] to believe in his initial encounters with them and his subsequent encounters that he would have an exclusive dealership as far as the Levi line was concerned." *Id.* at 744. The court agreed, concluding that "[t]he failure of Levi representatives to specifically advise [the store owner] that his claim [of exclusive dealership] was unfounded was . . . a reasonable basis for [him] to conclude that [Levi Strauss] would eventually act upon his complaint as to the breach of the agreement." *Id.* Ms. Drexel argues that she too was reasonable to wait for GM to remedy her complaint about the lack of millwright positions.

Here, however, GM did exactly what Levi Strauss failed to do—it informed Ms. Drexel that it had no skilled trade positions available and that none would probably be available for a long time. GM explained that it had over-staffed the Fairfax facility and that it needed production line workers and not millwrights. Thus, unlike the store owner in *Levi Strauss*, Ms. Drexel was not reasonable in her belief that GM was actively working to address the failure to employ her as a millwright.

Ms. Drexel also cites to *Zurn Constructors, Inc. v. B.F. Goodrich Co.*, 746 F. Supp. 1051 (D. Kan. 1990), to bolster her claim of equitable estoppel. In *Zurn*, the buyer established that, "despite repeated inquiries, [the seller] continually lulled [the buyer] into believing that it was entitled to receive and was receiving the lowest and most favorable price." *Id.* at 1056. The court concluded that since the seller's pricing information was confidential, the buyer had no way to discover facts necessary to support its breach of contract claim. *Id.* Thus, the court found sufficient facts to support the buyer's estoppel argument. *Id.*

Here, however, GM was not concealing information from Ms. Drexel that she had no way to discover. Instead, GM repeatedly told her that it had no millwright positions available. Thus, Ms. Drexel's claim of estoppel fails.

Ms. Drexel also maintains that Cox's representation on March 4, 2004, that she could not rescind her acceptance of the Fairfax offer was fraudulent. She asserts that she did not find this information out until October 2007, and thus the statute of limitations should be tolled. This information, however, had no bearing on the existence, or lack thereof, of a millwright position at the Fairfax plant, and it provides no basis for tolling the limitations period for her fraud and promissory estoppel claims.

The two-year statute of limitations period applies to Ms. Drexel's claims. That period cannot be equitably tolled based on any representations from GM. Thus, Ms. Drexel's complaint is untimely.

**IT IS THEREFORE ORDERED BY THE COURT** that Stipulation for Dismissal of Count I with Prejudice (Doc. 41) and Defendant's Motion for Summary Judgment (Doc. 42) are granted.

**IT IS SO ORDERED** this 5th day of February, 2009.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge